Next case on the calendar is Badar et al. v. Swissport USA et al. The lower court erred in resolving conflicting factual issues and making credibility determinations and granting summary judgment in this case. The parties had not charted a bench trial course at all. The court had called for a hearing, and the plaintiffs were the only party that produced it.  It's not a bench trial case. If there was a disputed issue of fact on this, I thought in your brief you conceded that that would be decided by the court, not by a jury, right? Who would decide that disputed fact about whether this is a delay or a nonperformance? We acknowledged in the brief that this would have proceeded to a bench trial. However, in the case of O'Hare, which we cited in the reply brief, this court held that even where the issues would ultimately be decided at a bench trial, if the parties do not chart a summary judgment course. I know, but that's a different situation. That's when a judge just takes the summary judgment papers and makes findings based upon the papers. If here there was a hearing, there was live testimony, which is equivalent to a bench trial, if we remanded and said you have to have a bench trial, wouldn't it be the exact same hearing that was conducted? No. It would not. With all due respect, it would not. First of all, the witnesses would not have all heard each other's testimony. Well, you could have made that objection at a hearing. That's not an objection that you would only make at the trial. If you didn't like the fact that all the witnesses were hearing each other's testimony, you could have made that objection, right? Why is that okay at a hearing and not at a trial? We had also objected. Well, this would not occur had it been a bench trial. The parties were directed to proceed for a hearing. Paula Cattone's testimony would not have been. We objected to Paula Cattone testifying at the hearing. We certainly would have objected to her testifying at trial. We were precluded from making opening and closing statements. The court controlled the order in which plaintiffs presented their evidence. So this was not a bench trial. The court considered it admissible evidence. It was certainly a hearing. It was only to determine a threshold issue about whether or not the defendants had offered an alternative means of transportation. Did you ask for opening and closing statements? We did, correct. And the judge said no? Yes, that's correct. So procedurally then, in terms of the form, the court was. . . But you agree that she could have found your client not credible, assuming it was a bench trial, could have made those credibility determinations herself, right? She heard the testimony of your client. Yes. Nobody from the airline contacted him, right? Well, at a bench trial, yes. And she said, I don't find that credible. But there was. . . The court's credibility determination, respectfully, was contradicted by the defendants' own evidence. The defendants. . . To this day, the defendants have not identified who purportedly contacted these plaintiffs. That doesn't mean it didn't happen, though. They have e-mails, you know, business records that suggest that there was contact with the family, right? Well, the e-mails actually are inherently contradictory. The first e-mail that was sent was sent by Mr. Hebatula, who was a witness in this case. And he testified in his deposition that he never spoke with the plaintiffs. Okay. I get that you're disputing what the evidence says. But you said a moment ago that the district court relied on inadmissible evidence. What is the inadmissible evidence? The inadmissible evidence was Paula Catone's testimony and the e-mails. There was no basis for the admission of the e-mails. None of the witnesses who had drafted them were produced. Mr. Hebatula had drafted the first one. The first one on October 29th, Mr. Hebatula said that the family had agreed with plans for alternative transportation. And this is going back to a point I was going to make, is that the e-mails are contradictory. On October 29th, Mr. Hebatula says his understanding is that the plaintiffs are going to allow PIA to secure alternate means. Can I ask why this matters? So let's say you don't know for sure whether the airline offered to send the remains the next day. We do know that what happened was they neglected to send it the first day. And then your clients decided they did not want to have it sent later. They were going to have the funeral in the United States, right? So, like, isn't that still a delay? I mean, regardless of whether they have yet made the offer or not, right, there was a delay of one day in transporting the remains, right? Well, no. With all due respect, the record shows that admissible evidence is that the plaintiffs were not contacted by the airline until November 1st, which was three days after the plane had taken off, two days after they were in Lahore Airport trying to locate the remains. So even if they were contacted, even if that were true, even if they were contacted three days later, why wouldn't that still be a delay? Frankly, your Honor— So cases where the airline just has engaged in non-performance, the airline has refused to do what they contracted to do, right? There's no evidence that suggests the airline did that. No, but there's no rule that says that until the airline calls you up and says we're not going to perform, you can't make a determination of non-performance. You'd be putting all the control in the airlines. Now, the unique fact here that should be considered is the fact that the plaintiffs were aware that that was the airline's last flight out of the United States. That was the last flight. What do you mean, that day or permanently? That day. Correct. I mean, the airlines, it's a regular airline. That airline no longer flies out of the United States. That was the last flight out of the United States. My client knew this. So my client— But that doesn't mean that flight couldn't be arranged by other means on other airlines. No, but the problem is is that they couldn't contact anyone at the airline to make the alternative arrangements. Mr. Bedard testified that he tried every means possible to contact someone in New York to arrange alternative means. He said he spent 10 hours, and actually the defendant's own e-mails show this. There is an e-mail from the PIA agent in Lahore saying, please answer your phone. You haven't answered your phone for hours. Were those calls to establish alternative means or just to find out what had happened? At that point, they didn't know what had happened. Well, they were trying to locate the body. Right. So he wasn't—I don't think he testified. I was calling them because I wanted to arrange for another flight. He was trying to find out where the body was. Correct. And then when he found out where the body was, he didn't reach out to the airlines after that to say, I want to put this on the—even if there was no flight that day, there could have been a flight obviously the next day. But the problem was, again, knowing that that was the last flight and having spent 10 hours trying to— But after the 10-hour mark, wouldn't it have been possible if he had called the airline and said, I want the next flight today, the next day, out of JFK to Pakistan, I want the remains to be on that flight? But the point here is that they were never able to contact anyone. PIA in Lahore never contacted anyone in New York during that 10-hour period. My clients only learned that the remains were discovered when they received a text message from the funeral service. Why isn't a 10-hour period a delay? It's the circumstances here. This was the last flight. They could not get a single person by phone, and PIA in Lahore could not get a single person even by email. So you're saying the remains were not going to go out that day, right? It was reasonable—I'm sorry. They could have gone out a different day, right? They could have, but it was reasonable for my clients to believe after the— the Pakistan International Airlines in Lahore could not reach anyone in New York. After 10 hours, their own agents in Lahore could not reach anyone in New York. After 10 hours, only the funeral service told them that they had located the remains. The airline did not even attempt to contact my clients until two days later. I know the onus here— Well, the funeral service is responsible for coordinating the transportation, right? Excuse me? The funeral service is responsible for coordinating the transportation, so why wouldn't it be sufficient for the funeral service to explain what happened to the body? But they didn't. What does it say about the airline? You said your clients learned about what happened from the funeral service. Yes, that was the only— The funeral service is a business that is contracted to help transport remains, right? They were coordinating the transportation. Yes, yes. So why doesn't that communication inform your clients of what happened? What does it tell us that the communication came from the funeral service as opposed to the airline itself? It tells us that the airline—my clients still believed that the airline was no longer operating there. The only entity that had located the remains were the funeral service. Perhaps we can do it slightly differently. If the funeral service knew a thing, doesn't it follow that the funeral service knew that thing from the airline? Not as far as my clients knew, and that's the other thing here. We keep talking— But the question is what difference does it make? The funeral service—one of their services was to arrange the flight of the remains to Pakistan. So they're the ones who obviously made the arrangements with the airline. They're the ones who would be calling the airline. They're the ones who would be communicating with the airline. Actually— They may not even know who your client was. I mean, it's wrenching. It's an anguishing situation. But why would they be answering the phone call from Pakistan, from your client, when they're dealing with a funeral service here in the United States? But there's no evidence that they were dealing with the funeral service in the United States. But the funeral service knew. They knew that the body had been located. How would they know that, except from the airline? But that's my point. My clients had never been informed that the airline had anything to do with the funeral— Well, maybe that's the failure of the funeral service. But it's also the failure of the airline. I know that all the questions here— Your clients had never been informed that the funeral service had anything to do with the airline? My clients had not been— The funeral service doesn't operate in the airline, right? They were coordinating with the airline to transport the remains. Yes, initially to get them to the airport. And once they get them to the airport, they're put in the custody of the airline. And the airline and Swissport take care of the transportation. The point here is that the only thing my clients knew was that only the funeral service contacted them. And I'd like to point out— If the funeral service had reached out, you're saying if the airline had reached out to the funeral service to tell your clients that we'd be happy to ship the remains today, and your client never reached out to the airline independently to make such a request, you're saying the airline is still not made clear that this is not non-performance? It's just a delay? No, if the airline had reached out to the funeral service and said, please reach out to your clients and tell them we'll be happy to arrange for alternate transportation, that would be an offer. That's not what happened here. Correct. That could be exactly what happened here. And the funeral service could have said to the airline, they've already made arrangements to fly to the United States. They're not interested in that. But we don't even know that that's what happened because there's no evidence that anybody— that the airline even told the funeral service that. The e-mails here are conflicting because they initially start out saying that the plane— Isn't it strange that there was another body that they did make arrangements for? Isn't it strange if the airline, in fact, doesn't do this, that they would offer it to one family and not the other for the same incident? But, again, that's all hearsay evidence. They never presented any evidence from anybody who had knowledge about the alternate transportation. So you dispute the other body was returned to Pakistan? I'm indicating that there is no evidence on the record that that actually occurred. Okay, so if there were evidence that there was a second body that was delayed and was returned to Pakistan, would that be evidence that this amounted to a delay? Not unless there is evidence that the airline actually contacted my clients and made the offer of alternative transportation. And I'd like to point out—I see my time has expired, but I'd like to point out that all the questions are geared to what did the plaintiffs do. The plaintiffs had spent hours trying to get anyone at the airline. The airline did nothing. The airline did nothing until November 1st. My clients—the question should not be what else could my clients have done, but it's why did the airline wait until November 1st to make a call to my clients and even then not make an offer of alternative transportation. Thank you. Thank you. May it please the Court. We respectfully request that this Court affirm the decision of lower court which correctly found that the Montreal Convention applies to international carriage of human remains and that the claims—the state law claims here are preempted by the Montreal Convention because they arose from delay in transportation. Here the Court seems to be focused on communications, at least plaintiffs does, after the fact, but there was no communication between the plaintiffs and the airline after the body was located. Instead, the communications were through the funeral home, which makes sense because the funeral home is the shipper. They are the consigner. They are the one who has the contract with Pakistan Airlines. Was there any testimony at the hearing from someone at the airline or the funeral service that this offer was made to the funeral home? Well, the standard is not offer. The standard is whether we had an opportunity to perform. Right. And that opportunity to perform has to be given to us. So when, under Article 12 of the Montreal Convention, the shipper is entitled to retrieve the cargo at the departure airport. They can. And that's exactly what was done in this case. So can we look at the record here and think, I mean, is it possible, you know, given all the inferences in favor of the plaintiffs here, that the funeral home discovered that the body was just sitting at the airport and said, oh, the airline just refused to do anything and just never moved it at all. And so that's what happened. Well, what happened, the facts in the summary judgment record before the court, through affidavits and deposition testimony, were clear and consistent that the bodies were located by the PIA representative who then contacted the funeral home because that's the shipper. The shipper arrived to pick up the remains, both remains because there were two sets, to bring it back into cold storage. The deposition testimony from R. Bob Hippitola at that time was he was informed that the family made a decision not to return the body. They were making alternative arrangements. Bilal testified, Bilal Bidar testified that he never spoke with PIA even before to arrange the transportations. If you look at the record, the appellate record, his testimony, appellate record A346, all options for transportation were with the funeral home. All discussions as to how the body would be transported in the first instance were with the funeral home. That's the consigner. That's the shipper. That's where the arrangements were made. Is it your position then that the airline reached out to the funeral home and offered to put the remains on another flight? Is that your position? We know that's happened because first there was an email correspondence from October 30, 2017, where the airline expected both sets of human remains to be returned for transportation on another carrier. That's what we fully anticipated. But unfortunately, the funeral home only returned one set of human remains, which was returned to Pakistan. Again, this is all in the affidavits submitted. So there is evidence in the record that the other remains did go back to Pakistan? Absolutely. Abba Pivotola's affidavit stated that on summary judgment motion. That's why it didn't come up. On a different airline? Yes, it did, on Emirates Airline. So what did that say about the opposing counsel's argument that the district court should not have had this evidentiary hearing and should have proceeded to a bench trial or something else? First, it was waived argument because they didn't object to the hearing. The idea of Paul Epitone's testimony was submitted well in advance of the hearing. No objection. It was only at the time of the hearing, and the district court said, wait a second, you had an opportunity to object, and you never timely objected to this. Even in their appellate brief, footnote three of their appellate brief says they do not contest the district court's ruling on evidence that was submitted specifically in footnote three. Plaintiffs did not contest the court's authority to resolve the conflicting evidentiary submissions. And now, at this late hour, they're saying we don't agree. And the only conflict is whether there was an offer. They said they wanted to give an opening statement and a closing statement and was not allowed to. Well, it frequently happens at bench trials where some judges don't take it, and I think that's what the judge was thinking. The judge only wanted to resolve this narrow issue. Was there oral argument? On summary judgment, no, there was none. And the judge simply wanted to resolve the narrow issue of whether this was delay or non-performance. What about the admissibility of the e-mails and the other records? Again, that was submitted by Plaintiffs' counsel. Plaintiffs' counsel was the one who submitted the e-mail in question as to the October 2017 dialogue between PIA explaining to Swissport that we're going to ship this, and we have to ship these two bodies now on another carrier. And it's not unusual for plaintiffs to say we didn't know because they weren't dealing with the airline. The funeral home was dealing with the airline. Well, you have no one at the bottom line there saying that you don't have anybody that you've been able to identify at the airline who could say I made that call to the funeral home and this is what I told them. Arbab Hibitola testified to this. Who did? Arbab Hibitola, our representative at the time. When he found the body. He didn't say I spoke. He said I spoke to the funeral home and I told them we'll put it on another flight? He said I spoke to the funeral home and the funeral home said that this family was making alternative arrangements, which was fine. But this family decided in Rule 56.1 statement, they admitted that they were not going to ship the body because they wanted to bury the body in the United States because of time due to their religious faith. They're certainly entitled to do that, but that does not allow you to circumvent the terms of the treaty because you wanted to do something different. And the funeral home deals with the return of the body to the family because once there's a delay, the remains go to the funeral home to be put back in cold storage. Is that right? That's right. It was in custody of the funeral home at some – I'm sorry, of the airline at some point because it was going to be put onto the plane. Correct. It was on a pallet, on a cargo pallet. So do we know who coordinated the return of custody of the remains from the airline to the funeral home? The other set of remains? No, no, this set of remains, right? So there's two steps. Correct. I mean it's a number of steps, right? So the funeral home brings the body to the airline, puts it in the custody of the airline. The airline fails to load it onto the plane. It's then discovered by the funeral home, by somebody, and then it goes back to the custody of the funeral home to put into cold storage, and then the family tells the funeral home, we don't want it sent to Pakistan, and then it goes into the custody of the family. So there's not just a communication between the airline and the funeral home over the decision about whether to have return to flight but also to return to their custody to put back into cold storage. Do we know the person that communicated with the funeral home over that? Arbab Hibatola testified that he contacted the funeral home when he found where the bodies were, that the funeral home returned to the airport to retrieve the bodies and to take them back to the funeral home for cold storage. We know at that point that Bilal Bidar spoke to the funeral home, its agent, the family's agent, in handling these remains, and then the next day the funeral home returns one body for transportation, and it's just giving us the opportunity to perform. That's the standard. The court looks to the Paredes case versus Ghana Airlines, the Aparaji case versus Virgil. That was my question to opposing counsel. So let's say we put aside all this evidence about what happened. Let's say there just wasn't a communication with the family for three days or whatever it was. Why isn't that a failure to perform as opposed to a delay? Because the test, the legal standard, is giving the carrier an opportunity to perform. You had an opportunity. If three days go by and the carrier doesn't reach out, isn't that an opportunity? The body needs to be returned to us. It's the shipper who has to re-tender it to us, and they never re-tendered this body to us. They didn't really make this particular argument, but it's something that went through my head, and I'm wondering what your response would be. Suppose you do have cargo that you're shipping, but it's a time-sensitive reason so that if 24 hours goes by, it's a particular event. I need to ship to this location. Something's going to happen tomorrow, and it's not done. Couldn't that be considered non-performance because the whole purpose of the shipment now is frustrated, or that wouldn't be non-performance in that situation? The courts have ruled that what non-performance is is when a carrier actually refuses to transport or repudiates the contract. You need a refusal. That's what's triggering non-performance. All these other cases are delaying, and that's because the treaty encompasses all of these claims. And cargo is even different than passenger because here it's the consigner who controls it. They have the right under the treaty to retrieve the goods at their option at the departure airport, which was done. You can't circumvent the terms of the convention simply because you want to retrieve your cargo. That could lead to all kinds of claims. So you're arguing that once the funeral service retrieved the bodies, the airline didn't have to do anything, just wait to see whether the cargo would be retendered. Correct, just like any cargo. Other cargo sometimes can be retrieved from us if there's a delay, and sometimes it may be shipped by truck. You would agree that if the airline had said to the shipper, we don't want it back, we're done, that would be non-performance? If the carrier came out and said we're not performing. You did absolutely nothing, and you just were not responsive to the shipper despite their entreaty to send it on a later flight. That would be non-performance. You wouldn't disagree with that? Refusal to transport would be non-performance, and we've seen that in cases like the Inverie, Nigeria case, which was a passenger case, but still you have a flat-out refusal of a carrier saying we're not flying you, we're not taking you at all. But that's not what's happening here. Here the carrier is expecting the shipment to return. You're saying the carrier here reaches out. They don't just wait for it to be retendered. You're saying the carrier reaches out and... Well, first here, Arbab Hebatola testified that when the body was retrieved, he was told that this family made alternative arrangements. Now, if, but otherwise we would wait because we don't know what the shipper is going to determine what to do with the goods. What do we do with the fact that the carrier is no longer making flights to Pakistan? So we can be sure. One thing we can be sure of is that Pakistan Air Hunts did not reach out to the family or to the funeral home and say we'll put it on a later flight because there were no other flights. First, we wouldn't reach out to the family because that's not the shipper. I understand, but how could you reach out to the funeral service and say we're going to put it on another flight? There were no other flights. The funeral home is the one who arranges for the transportation to make sure that the flights are available and gave the options. And this is in Bilal's testimony as well. All arrangements were made with the funeral home. And here the funeral home knows because they tender back one body for transportation. But the Bilal family... Why would they tender the body for transportation to an airline that no longer is flying the route? Yes, Your Honor, because the way... If I could finish, I see my time is up. But the way it works with consignments and shipments is that the funeral home arranges for space and the carriers know where other space is available. And that's how they knew a flight was going to Lahore, Pakistan on Emirates Airlines. And that was in the record too on the Arabab-Hibatola affidavit. And it's just because the difference here, unlike a passenger at a ticket counter, it's the shipper, the funeral home, who's liaising with how it's going to be placed on a pallet and shipped overseas. And that would happen. Airlines would arrange with other airlines to transport passengers or cargo. It's slightly different with passengers, but it's similar. It's similar. The difference here is our communication and the reaching out. We wouldn't reach out to the Badar family. And Badar himself testified he had no communications at all after the body was located. Quick question about a different issue. So why did this French court in 1952 say that human remains are not cargo or marchandise? Merchandise, if I could, an academic discussion of the term merchandise, which this court doesn't need to get into because the language has changed to cargo. The Montreal Convention text itself in the last paragraph says that the English text should be treated as authentic as the other languages such as French, Russian, or Spanish. The merchandise term did concern originally goods, which would exclude such things as pets and animals, which weren't being transported as frequently back in 1929 when the Warsaw Convention was drafted. So in that case, they looked at French civil law to determine whether merchandise included human remains, and it was not. But this term was then discussed by the drafters in 1952 when they started amending the treaty. The Hague Convention in 1955, the Montreal Protocols thereafter, and the Montreal Convention all used the term cargo because they wanted the word to be broad enough to encompass such things as animals. What is the French version of the – The French version has remained merchandise, but the subcommittee – But all of these are authoritative, right? You don't need to look to the French text because the text of the Montreal Convention itself, the last paragraph, says you can treat the English version, Russian version, Spanish version as authentic text. It's no longer the case as the Ninth Circuit and the Third Circuit previously on this issue had looked to the original French text. We don't need to do that anymore with the Montreal Convention. Well, I guess I'm asking you this question. So you seem to suggest the French court might have been right about that interpretation of merchandise. So does that mean we might have different results under the English text or the French text? Well, understand you would have because it was French civil law was determining what the word So does this mean if we're transferring the remains from Paris to Lahore as opposed to New York to Lahore, we might have a different result? If you're looking at the French text, you may. I think that the overwhelming courts, at least in the United States, the Johnson case versus American Airlines, the Oniusa case also in the Third Circuit, went through this text and said goods does actually encompass human remains. Here it's an easier test because we're dealing with the word cargo, which is a broader term, and even the subcommittee considered making an explicit reference to live animals but decided that the use of the word, the broader term cargo, made that unnecessary when the drafters were revising the terms to use cargo in this particular case. So it's simpler because of the text. Thank you. Thank you. First of all, all of counsel's statements about the practice of the airline speaking with MFS, that's not in this record. Okay. Mr. Hibatula's affidavit is eight paragraphs. It's at pages 136 and 137. He says nothing about speaking directly with anybody at MFS. He says, I was subsequently informed that the Badar family decided not to transport the remains to Pakistan but rather intend to have the burial in the United States. Now, I'd like to compare that to Mr. Hibatula's e-mail, the first e-mail that went out on this, when my clients were desperately trying to reach somebody. Mr. Hibatula at page 736 of the record says, both the families have accepted the alternative transportation and are also in contact with the funeral home. So we have a clear conflict. First, we have an affidavit or declaration from Mr. Hibatula saying they subsequently decided to ship elsewhere. We have the defendant saying that my clients refused alternative means, and we have an e-mail from Mr. Hibatula on the 29th saying this is all decided, they've accepted alternative arrangements. If you look at the e-mails on October 30th. That's what evidentiary hearings are for, and that's what happened here. He said that you did not object to proceeding by way of evidentiary hearing as opposed to, I guess, a formal bench trial. Isn't that accurate? It was a hearing to determine threshold issues because the court. Judge, you're proceeding in the wrong way. This is wrong. You have to have a bench trial over this. You can't have a hearing. We don't want Ms. Cotone to testify. They're saying you didn't do either of those things. No, but that's because the language of the court's decision didn't say this is going to be a bench trial. The court just wasn't. I know, but you could have objected. If the judge in the decision said we're going to have an evidentiary hearing, you could have said no, no, no. That's not the right way to do it. But if you're having an evidentiary hearing to identify whether there's conflicting evidence, the court wasn't persuaded that either side had done enough, and that's why the court asked for a hearing. The question to be decided is not whether, in fact, your clients accepted the alternative transportation or not. The question to be decided is whether this is a delay or a non-performance. So even if the official from Pakistan Airlines was mistaken at one point about whether the alternative transportation had been accepted and later realized that it had not been, isn't it all evidence that he was trying to arrange alternative transportation? Isn't it all evidence that it's in the nature of delay as opposed to non-performance? Not under the circumstances. These are all fact-specific cases. Again, there is no effort by the airline to communicate with the plaintiffs. There is no evidence that the airline even communicated with the funeral service. Okay, well, what about opposing counsel's argument that the airline would not be communicating with the plaintiffs because the funeral home is the shipper? Why can't the airline communicate with the shipper? Well, first of all, that's a hearsay argument. They offered no testimony to that effect before the court on the papers. Is there a dispute that the funeral home was the shipper, that it's a service? No, there's no dispute that they were the shipper. So, I mean, what do you mean? My client heard repeatedly throughout when he arrived at the airport. He spoke with representatives from the airlines who repeatedly confirmed to him that his brother's remains were on board. So to say that they would have only communicated with MFS is speculation. Is it your argument that the evidence you're hearing would properly have been conducted only to find out if there was a material issue as a fact? Yes. And you did not anticipate and you argue the judge should not have issued a ruling on credibility and on the result. Yes, yes. The court, I mean, the court at page, the supplemental appendix, page 17, the court says there's insufficient evidence for the court to decide the legal question. And therefore, and she talks at a page. Well, that would seem to mean that if we have an evidentiary hearing, I might get sufficient evidence to decide the question, which is just what the court did. But to decide whether there's conflicting evidence. She did in credit, she said that the defense arguments, the plaintiffs had to make. In order to find out whether you're going to hear conflicting evidence and then say, well, I've heard conflicting evidence. So let's have a trial where I can hear the same conflicting evidence over again and then decide who I think is telling the truth. Well, and additional evidence. This is a summary judgment proceeding. The burdens of proof are different than a trial. We only needed to establish the non-performance sufficient to defeat their motion or to prevail on ours. A trial is a different circumstance. We need some notice there. She denied the cross motions for summary judgment and said the evidentiary hearing. Yes. Is required to develop the necessary facts to determine the threshold issues. I think she was pretty clear. Like, there are issues of fact. She construed it most favorably to your client and said, there's issues of fact. We're going to have a hearing to resolve these. I don't think you can interpret that any other way. I don't think you were surprised. She said you'd submit testimony. It was clear what that was going to be. That wasn't some continuation of summary judgment. Well, then, Your Honor, then the court should not have allowed any of the inadmissible evidence. And I'd like to point out with respect to Ms. Cotone's testimony and going into addressing what some of the defense counsel said here, Paula Cotone testified that no one from the airline in New York ever spoke with anybody except the airline in Lahore. So the claims that there was any communications with the plaintiff is misplaced. And counsel also referred to footnote three. Frankly, I just want to bring this up as essentially that we conceded that the court could have decided that at a bench trial. That's not what footnote three said. Footnote three said that if there had been a bench trial, the court certainly would have been the fact finder. It was not a concession of the point. All right. Thank you both. And we'll reserve decision. Thank you. Have a good day.